UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY CHALK, | : | CIVIL NO. 3:12-CV-1028 |
| Petitioner, | : | (Judge Mariani) |
| v. | : | |
| WARDEN JEFFREY THOMPSON, | : | |
| Respondent. | : | |

## MEMORANDUM

### I.   Introduction

Petitioner Anthony Chalk ("Petitioner" or "Chalk"), a federal inmate presently confined at the United States Penitentiary Lewisburg ("USP Lewisburg") in Lewisburg, Pennsylvania, initiated this action pro se by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2241. (Doc. 1.) He alleges that he was subjected to a "conspiratorially planned racially motivated disciplinary action" when he was falsely charged with and found guilty of threatening staff at USP Lewisburg based upon a statement that he made in a letter that he wrote to a family member who also is confined in federal prison. Chalk submits that there was no evidence to support a finding that he committed the prohibited act of threatening and that he therefore is entitled to habeas relief where the sanctions imposed included the loss of good conduct time.

By Order dated June 7, 2012, we directed Respondent to show cause within twenty-one (21) days why the Petition should not be granted. (Doc. 4.) On June 28, 2012, Respondent filed

a Response to the Petition (Doc. 5) along with supporting exhibits[1] (Doc. 5-1) and supporting authority (Doc. 5-2). Chalk filed a Reply on July 9, 2012. (Doc. 6.) Accordingly, the Petition is fully briefed and ripe for disposition. For the reasons set forth herein, the Petition will be denied.

## II. Factual Background

Chalk presently is serving a sentence imposed by the United States District Court for the District of South Carolina for conspiracy to possess with intent to deliver fifty grams or more of cocaine base. (Doc. 5-1 at 3[2], Romano Decl., ¶ 2.) As of June 11, 2012, his projected release date was November 14, 2022. (Id.)

On November 16, 2011, Incident Report Number 2234264 was issued and delivered to Chalk. (Doc. 5-1 at 12-15.) The Report charged Chalk with Code 199/101 violations of disruptive conduct most like serious assault, and a Code 196 violation for abuse of mail to commit a greater severity act. (Id. at 12.) Reporting Officer T. Wagner described the incident as follows:

> On 11/16/2011 I reviewed a letter sent by inmate Chalk, Anthony #12462-171. This letter is being sent to [a federal inmate relative in] Bennetsville, SC. In this letter inmate Chalk states: 'These crackers got my disciplinary record so fucked up, I want to stab the shit out of them.' It is obvious inmate Chalk is being disruptive by stating he wishes to harm staff by stabbing them, and sending this information out in the mail.

---

[1] Respondent submitted the Declaration of Michael S. Romano, an Attorney Advisor employed by the BOP at USP Lewisburg (Doc. 5-1, Ex. 1), in which he refers to the following attachments: a copy of Petitioner's Public Information Inmate Data as of 6/11/12 (Attach. A); a copy of Petitioner's Administrative Remedy Generalized Retrieval relating to this action (Attach. B); and a copy of the DHO Packet for Incident Report 2234264 (Attach. C).

[2] Throughout this Memorandum, citations to page numbers refer to the page numbers generated by the CM/ECF System.

(Id. § 11.) A copy of Chalk's letter is attached to the Incident Report. (Id. at 14-15.)

The Incident Report was delivered to Chalk on November 16, 2011 at 4:10 p.m. (Id. at 12 §§ 14-16.) Following an investigation on the same date by J. Foura, Chalk was advised by Foura of his right to remain silent at all stages of the disciplinary process. (Id. at 13 § 23.) Upon being advised of his rights, Chalk stated, "I meant no disrespect." (Id. § 24.) The Report indicates that Chalk displayed a poor attitude during the investigation. (Id.)

On November 17, 2011, a Unit Disciplinary Committee ("UDC") referred the Incident Report to a Discipline Hearing Officer ("DHO") because the seriousness of the charge warranted consideration for sanctions higher than those available to the UDC. (Id. at 12, Part II.) During the UDC review, Chalk stated, "I was expressing my feelings to my family on paper." (Id. ¶ 17.) At the conclusion of the UDC hearing, Chalk was provided with a Notice of Discipline Hearing before the DHO and an Inmate Rights at Discipline Hearing form. (Id. at 16, 17.) Chalk refused to sign the Inmate Rights at Discipline Hearing form. (Id. at 17.) Chalk requested that R. Whitmire serve as his staff representative and also indicated that he did not wish to have witnesses. (Id. at 16.) R. Whitmire agreed to serve as Chalk's staff representative at the hearing, and signed a Duties of Staff Representative form on November 18, 2011. (Id. at 18.)

### A. Initial DHO Hearing

A DHO hearing was conducted on December 7, 2011. (Id. at 19-22.) At the hearing, Mr. Whitmire appeared as Chalk's staff representative. (Id. at 19 § II ¶ E.) Whitmire stated that he had

no first hand knowledge of the incident in this case, but stated, "Sometimes people express themselves improperly. I don't know if what he said constitutes a threat. We tell them to write down their feelings. Much of the incentive program has to do with that. I think some of the inmate's actions ha[ve] to do with this." (Id.)

At the outset of the hearing, Chalk stated that he understood his rights and denied the charges against him. (Id. § III ¶¶ A, B.) He presented no documentary evidence or witnesses. (Id. ¶ B, at 20 ¶ C.) Chalk testified that the description of the incident by Officer Wagner in the Incident Report was "completely inaccurate." (Id. at 19 § III ¶ B.) He further testified as follows:

> I wrote that statement because I was told that I should put my feelings down in writing. I am trying to lay back into the program and get on through. The letter was to my brother. He is my brother and also my codefendant. No one here has done anything to me. Nor do I want to harm any staff. I don't have a conflict with any staff member here. I was just expressing my thoughts as I was told to do so. I did not mean what I wrote as no threat [sic] or to be disruptive.

(Id.) Chalk did not complain about any procedural errors during the hearing. (Id. at 20 § III ¶ B.)

Consistent with Chalk's election prior to the hearing (Doc. 5-1 at 16), no witnesses were called. (Id. § III ¶ C.) In addition to the Incident Report and Investigation, the DHO considered the photocopy of the letter, dated November 13, 2011, written by Chalk and discovered by the reporting officer. (Id. § III ¶ D.) As noted by the DHO, the letter reads, in part, "These crackers got my disciplinary record so fucked up, I want to stab the shit out of one of them." (Id.)

Upon consideration of the evidence, the DHO found that Chalk committed the prohibited act in violation of Codes 199/101, namely conduct which disrupts or interferes with the security or

orderly running of the institution, most like attempting to seriously assault any person. (Id. § V.) The DHO relied upon the written report of Officer Wagner in which he reported reviewing the letter that was being sent by Chalk to a federal inmate relative. (Id.) The DHO observed that it was obvious to Officer Wagner that Chalk was being disruptive by stating he wished to harm staff by stabbing them and by sending that information out in the mail. (Id.) In addition, the DHO relied on the photocopy of the letter, which he observed "contained explicit language written by you of your intent to attempt to cause serious physical injury to a staff member." (Id.)

The DHO also considered the testimony of Chalk and his staff representative and found that it did not exonerate Chalk. (Id. at 21 § V.) The DHO explained that he based his finding that Chalk committed the prohibited act upon Chalk's testimony in which he admitted that he wrote the statement in the letter and intended to send it to another federal inmate. (Id.) The DHO found Chalk's claim that he merely was expressing his thoughts as he was told to do not to be credible because "[s]taff are not to be held responsible for the explicit language you wrote of your intent to attempt to cause serious physical injury to staff." (Id.) Further, the DHO found Chalk's contention that he did not have knowledge of any wrongdoing to be without merit as the DHO recognized Chalk's statements to be his "attempt to minimize [his] actions in order to avoid the consequences of the prohibited act as charged." (Id.) Ultimately, the DHO gave the greater weight of the evidence to the written account of the reporting officer, and therefore found that the evidence

supported the finding that Chalk committed the prohibited act.[3] (Id. at 21-22 § V.)

The DHO imposed the following sanctions on Chalk: **(1)** disallowance of forty-one (41) days of good conduct time; **(2)** sixty (60) days disciplinary segregation; **(3)** ninety (90) days loss of commissary privileges; **(4)** ninety (90) days loss of telephone privileges; and **(5)** ninety (90) days loss of visiting privileges. (Id. at 22 § VI.) The DHO issued his written decision on January 6, 2012, and the DHO Report was delivered to Chalk on January 9, 2012.[4] (Id. § IX.)

B.     <u>Remand by Regional Director</u>

Chalk appealed the DHO's decision to the Regional Director through the Federal Bureau of Prisons ("BOP")'s Administrative Remedy Process. (Doc. 5-1 at 29-30.) On February 17, 2012, the Regional Director issued a memorandum to the Warden of USP Lewisburg remanding the case for further review. (Id.) In his memorandum, the Regional Director stated that there did not appear to be enough evidence to support the finding of guilt of a violation of Code 199 for disruptive conduct. (Id. at 29.) The Regional Director explained that a charge under Code 203 for

---

[3]The DHO acknowledged a typographical error in Section 11 of the incident report where the reporting officer wrote the date of "06/14/2011", which was different from the date on which the reporting officer stated he was made aware of the incident,"11/16/2011", as documented several times within the Incident Report. (Doc. 5-1 at 21 § V (citing Doc. 5-1 at 12, Incident Report).) The DHO concluded that this typographical error did not infringe upon Chalk's due process rights and that the error "pales in comparison to your commission of the prohibited act." (Id.)

[4]As observed by Respondent (see Doc. 5 at 7 n.2), the DHO Report was dated January 6, 2011, and the date of delivery was stated as January 9, 2011. We agree that, where the hearing was held on December 7, 2011, it is apparent that the statement of the year 2011 in the date was an error.

threatening was more appropriate. (Id.) Specifically, the Regional Director stated that, "[i]t appears that Chalk's actions are fully incorporated in offense Code 203. If Code 199 is to be considered there must be evidence the inmate actually attempted to stab someone." (Id. at 30.) Accordingly, the Regional Director directed that, "[i]f new evidence is considered to support Code 199 most like Attempted Assault, Code 101A, the incident report should be amended and reissued to the inmate." (Id. at 29.) The memorandum also instructed that new hearings must be held, the initial sanctions may not be increased, and that the sanctions that were imposed appear to be consistent with a Code 203 violation. (Id. at 29-30.) Finally, the memorandum noted an error in section IV of the DHO Report incorrectly stating that the DHO found the inmate committed a violation of Code 297.[5] (Id. at 29.)

### C.     DHO Re-hearing

On February 29, 2012, a re-hearing was conducted in accordance with the Regional Director's memorandum. (Doc. 5-1 at 23-26, 3/1/12 DHO Report.) Chalk again requested that R. Whitmire serve as his staff representative, and R. Whitmire appeared on Chalk's behalf at the re-hearing. (Id. at 23 § II ¶ B.) R. Whitmire signed a Duties of Staff Representative form on February 29, 2012. (Id. at 31.)

R. Whitmire repeated the statement that he provided at the first hearing on December 7, 2011 that he did not have first-hand knowledge of the incident, that sometimes people express

---

[5] A Code 297 violation involves an improper use of the telephone. See BOP Program Statement 5270.09 at 48, Table 1, available at http://www.bop.gov.

themselves improperly, and that he thought some of Chalk's actions had to do with the aspect of the incentive program in which inmates are encouraged to write down their feelings. (Id. at 23 § II ¶ E.)

At the outset of the re-hearing, Chalk indicated that he understood his rights, and as at the initial hearing, he did not produce witnesses or provide documentary evidence. (Id. § III ¶ B; at 24 ¶¶ C, D.) He again denied the charges and repeated that he wrote the statement in his letter because staff told him that he should express his feelings in writing. (Id. at 23 § III ¶ B.) Chalk reiterated that his letter was not intended to threaten or be disruptive, that he did not intend to harm anyone, and noted that he had not stabbed anyone since he wrote the letter. (Id. at 23-24 § III ¶ B.) Chalk stated, "I don't feel as if I was treated right with this", but he did not complain of any procedural errors during the hearing. (Id. at 24 § III ¶ B.)

Upon consideration of the evidence, the DHO concluded that Chalk committed the prohibited act of threatening in violation of Code 203. (Id. § IV.) He again based his finding on Chalk's admission that he wrote the statement in the letter and intended to send it to another federal inmate, and found this fact only added to the seriousness of this act. (Id. at 25 § V.) The DHO explained that he again relied on the reporting officer's report and a photocopy of Chalk's letter in reaching his finding of guilt, which corroborated the reporting officer's description of the incident. (Id. at 24 § V.) The DHO again found that neither Chalk nor his staff representative presented any evidence that exonerated Chalk from the charges against him and also that Chalk's claim that he merely was expressing his thoughts was not credible inasmuch as staff could not be

8

held responsible for language Chalk wrote expressing his intent to attempt to cause serious physical injury to staff. (Id. at 25 § V.) The DHO again found Chalk's statements to be an attempt to "minimize" his actions in order to avoid the consequences of those actions. (Id.) The DHO further stated as follows:

> The DHO notes the written comments made by you, to another federal inmate in this letter, are clearly wrong, and transcends behavior which would ordinarily be considered less serious in nature. Specifically, it is clearly evident, you expressed your intent to, 'stab the shit out of (staff)'. Your disruptive behavior obviously constitutes the act of threatening. The DHO also notes you have a disciplinary history for assaulting and threatening staff. This information was not used to find you committed the prohibited act. However, your historical disciplinary information only bolsters the DHO's belief that you committed the prohibited act of threatening.

(Id.)

Based on his finding that Chalk was guilty solely of a Code 203 violation for threatening, rather than a violation of Code 199/101A, the DHO reduced Chalk's sanctions to the disallowance of twenty-seven (27) days of good conduct time, thirty (30) days disciplinary segregation, and a ninety (90) days loss of commissary, telephone and visiting privileges. (Id. at 26 § VI.) In light of the reduction of sanctions, the DHO issued a memorandum to the appropriate USP Lewisburg staff person in which he requested the restoration of the eighteen (18) days of previously disallowed good conduct time. (Id. at 28.)

## III. Discussion

### A. Exhaustion Requirement

The BOP has a three-level Administrative Remedy Program that is available to inmates for

"review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. Inmates first must informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined through the submission of a BP-9 form. Id. at § 542.14(a). If dissatisfied with the response, the inmate may appeal an adverse decision first to the Regional Office and then to the Central Office of the BOP. Id. at § 542.15(a). No administrative remedy appeal is considered to have been fully exhausted until it has been denied by the Central Office of the BOP. Id.

The Central Office must respond to an administrative remedy appeal within forty (40) days from the date it receives an appeal. 28 C.F.R. § 542.18. If that time period is insufficient, the Central Office may extend it by twenty (20) days. Id. The Central Office must notify the inmate of such an extension in writing. Id.

A review of records in this case reveals that, following the February 29, 2012 re-hearing, on March 19, 2012, Chalk appealed the DHO's decision to the Regional Director via Administrative Remedy 680613-R1. (Doc. 5-1, Romano Decl., ¶ 3; Doc. 5-1 at 9-10, Attach. B.) On April 18, 2012, the Regional Director denied Chalk's appeal. (Id.) On May 7, 2012, Chalk appealed to the Central Office via Administrative Remedy 680613-A1. (Id.) The Central Office accepted the appeal, and on May 30, 2012, the Central Office issued a notice to Chalk informing him of its need for an extension, thus extending the deadline for the Central Office response until July 6, 2012.

(Id.) Chalk filed the instant Petition on May 31, 2012 without having received a response from the Central Office, and before the expiration of the forty (40) day period during which the Central Office must respond to appeals, and also before the expiration of the sixty (60) day period during which the Central Office must respond to an appeal if it issues a notice stating that it requires a twenty (20) day extension of time. See 28 C.F.R. § 542.18.

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts in the Third Circuit consistently have required a petitioner to exhaust his administrative remedies before filing a petition for a writ of habeas corpus. Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) (per curiam)); e.g., Callwood v. Enos, 230 F.3d 627, 632 (3d Cir. 2000). The Third Circuit requires administrative exhaustion for habeas claims raised under § 2241 because "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato, 98 F.3d at 761-62 (citations omitted).[6]

---

[6] In his Reply, Chalk claims that, in the Response, Respondent takes the position that exhaustion is mandatory under the Prison Litigation Reform Act ("PLRA"), and Chalk then cites the decision of the United States Court of Appeals for the Fifth Circuit, Davis v. Fechtel, 150 F.3d 486 (5th Cir. 1998) for the proposition that the PLRA does not apply to habeas proceedings. (See Doc. 6, Reply, at 1.) The Response does not contain any argument that the exhaustion requirement in § 2241 habeas proceedings stems from the PLRA. Rather, the Response acknowledges that, while there is no statutory requirement applicable to habeas petitions brought under § 2241, an exhaustion requirement has developed through case law.

While there are instances where exhaustion may be excused, the Supreme Court has recognized that: "'it is a principle controlling all habeas corpus petitions to the federal courts, that those courts will interfere with the administration of justice . . . only in rare cases where exceptional circumstances of peculiar urgency are shown to exist.'" Rose v. Lundy, 455 U.S. 509, 515-16 (1982) (quoting Ex parte Hawk, 321 U.S. 114, 117 (1944) (internal quotations and footnote omitted)); e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion of administrative remedies not required where petitioner demonstrates futility); Lyons v. U.S. Marshalls, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "[1] would be futile, [2] if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or [3] if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury").

In the instant case, Chalk initiated this action on May 31, 2012, which was before the expiration of the forty (40) day period for the Central Office to respond to his appeal, and one (1) day after the Central Office issued a notice to him stating that it required the additional twenty (20) days, or until July 6, 2012, as permitted under 28 C.F.R. § 542.18, to respond to his appeal. Thus, Chalk's administrative remedy appeal clearly was not exhausted before he filed his Petition because he had not received a denial by the Central Office. See 28 C.F.R. § 542.15(a). As such, we properly could dismiss the instant Petition for failure to exhaust administrative remedies and end our discussion here.

Nevertheless, having reviewed the parties' filings, as more fully explained below, we find

that there is no basis for habeas relief because the record shows that there was "some evidence" to support the DHO's finding of guilt following the February 29, 2012 re-hearing, Chalk was afforded all of the due process protections that are required where an inmate faces the disallowance of good conduct time, and the sanctions that were imposed were within the range of sanctions permitted for a Code 203 violation. The Petition therefore will be denied on the merits.

### B. Sufficiency of the Evidence

The decision of the hearing examiner will be upheld if there is "some evidence" to support the decision to revoke good time credits. Superintendent v. Hill, 472 U.S. 445, 455 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56. Under Hill, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Id. at 457; see also 28 C.F.R. § 541.8(f) (requiring that the DHO's decision be "based upon at least some facts and, if there is conflicting evidence, on the greater weight of the evidence."). Moreover, "[t]he sufficiency standard is met where a DHO supports a finding of culpability solely by reference

to an incident report compiled by a corrections officer." Moles v. Holt, 221 Fed. Appx. 92, 94 (3d Cir. 2007) (citations omitted).

In the case at hand, it is apparent that the DHO's decision was supported by "some evidence" and that the DHO properly documented the findings that led to the decision, and specific evidence relied upon in reaching those findings, as required by 28 C.F.R. § 541.8(h). In his Reply, Chalk argues that there is no evidence to support the finding that he was guilty of threatening. (See Doc. 6 at 3.) He contends that the only evidence was a letter containing protected speech, and that there is nothing in the record to support the conclusion that he threatened anyone, particularly where Chalk testified that he did not intend to threaten anyone. (See id.) To the contrary, a review of the record reveals that there clearly was some evidence to support the DHO's finding that Chalk was guilty of threatening based upon the statements he wrote in a letter to a federal inmate relative. In particular, the DHO relied upon the account of the reporting officer, as set forth in the Incident Report; the letter itself, which, importantly, Chalk admitted to writing, and which corroborated the reporting officer's description of the incident; and the testimony of Chalk and his staff representative. (See Doc. 5-1, 3/1/12 DHO Report, at 25.)

To the extent Chalk takes issue with the DHO's determination that the reporting officer's account was entitled to more weight than Chalk's testimony, we observe that "a challenge that goes to the weight of the evidence is irrelevant to the issue of whether the DHO's findings had a constitutionally sufficient evidentiary basis." Moles, 221 Fed. Appx. at 94 (citations omitted). As

such, the fact that the DHO ultimately concluded that the reporting officer's statement was entitled to greater weight than Chalk's claim that he did not intend to harm staff, which the DHO found to be an attempt by Chalk to mitigate the consequences of his actions, does not alter the fact that the DHO's decision had a sufficient evidentiary basis.

### C.     Due Process Requirements

In his Reply, Chalk suggests that his letter contained speech that is protected by the First Amendment, and therefore, his right to due process was violated when he was punished based upon his statements in the letter. (See Doc. 6 at 3.) However, it is apparent upon review of the record that Chalk was afforded all of the due process protections to which he was entitled in the disciplinary proceedings that ensued after the discovery of his letter. Federal inmates possess a liberty interest in good conduct time. Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991). In the case at hand, Chalk ultimately was sanctioned with the loss of twenty-seven (27) days of good conduct time following the February 29, 2012 re-hearing, and therefore, he has identified a liberty interest that is at stake in this matter.

In Wolff, where the plaintiffs were deprived of good time credits as a severe sanction for serious misconduct, the Supreme Court held that such inmates had various procedural due process protections in a prison disciplinary proceeding, including **(1)** the right to appear before an impartial decision-making body; **(2)** twenty-four hour advance written notice of the charges; **(3)** an opportunity to call witnesses and present documentary evidence, provided the presentation of such

15

does not threaten institutional safety or correctional goals; **(4)** assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and **(5)** a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Wolff, 418 U.S. at 563-71. It is apparent upon review of the record that Chalk was afforded each of these protections. Accordingly, any due process challenge by Chalk in the context of these proceedings lacks merit.[7]

### D. Sanctions

The sanctions that were imposed on Chalk following the February 29, 2012 re-hearing, namely the disallowance of twenty-seven (27) days of good conduct time, thirty (30) days of disciplinary segregation, and the loss of commissary, telephone, and visiting privileges for ninety (90) days, are within the range of sanctions that are permitted for a high security 200-level offense, in this case, for Code 203, threatening. See 28 C.F.R. § 541.3(b), Table 1. Accordingly, any challenge by Chalk to the sanctions that were imposed lacks merit.

## IV. Conclusion

Because there was "some evidence" to support the DHO's finding of guilt following the February 29, 2012 re-hearing, Chalk was afforded each of the due process protections set forth

---

[7] To the extent that Chalk seeks to pursue a claim of a violation of his First Amendment right to freedom of speech, that claim does not constitute a challenge to the fact or duration of his confinement or execution of his sentence, and therefore must be raised in a properly filed civil rights action. See Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973); Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002). We express no opinion on the merits of any such claim.

in <u>Wolff</u>, <u>supra</u>, and the sanctions that were imposed were within the permissible range, we find that Chalk is not entitled to habeas relief, and therefore, the Petition will be denied. An appropriate Order will enter.

July        , 2012

/s/ Robert D. Mariani
Robert D. Mariani
United States District Judge